And turn to our next case, which is United States v. Hurtado. May I proceed?  Good morning, Your Honors. I wanted to focus my argument on the employment restriction in this case, because I believe it was both procedurally and substantively erroneous. Can I ask you a question? Yes. And that is, I saw at the sentence, the sentencing on the probation violation, the district court said something along the lines of, I've given you the proposed additional language to the new supervised release condition. I couldn't find it anywhere. Do you know from your search of the record whether that happened at some prior time or something, where she distributed the revised condition with the new restriction? I know in the sealed appendix, starting at SA80, there is the probation report. There it refers to the employment restriction. I don't know if there was a change to that or not. So it's SA85, it says, as well as the additional condition of the employment prohibition that I read into the record earlier. I'm looking at, I guess there's two essays. There's a sealed appendix and a supplemental appendix. Supplemental appendix. Right. I was referring to the sealed appendix, which has like the probation report. And so that at SA . . . So I saw this and I just thought, I couldn't find where she had read it into the record. Do you know offhand? I don't know. I know in SA86, there's a reference to the employment restriction. The employment restriction that's in SA86 is different from the one that was ultimately implied. The one in SA86 is, I think, even broader. I don't know if . . . I wasn't counseling the district . . . Can we actually go through that employment restriction? I thought it was that he couldn't be in any business involving telemarketing, direct mail, timeshare or vacations. Yes. Those four things. Right. Okay. And I would say that that is a very broad restriction. It basically . . . But the concern is the vacations. I mean, the timeshares he was convicted of. Well, but I think it's important to focus on the difference between the crime of conviction and the business that he was in. No, I understand. And that's the vacations. That's . . . well, that's vacation related. Arguably, I think his vacation business on supervised release was he basically sold vacation packages and people would . . . the way they would get a discount is they would come to a presentation for a timeshare. So it somehow was related to a timeshare, but that's not what it was about. I thought it was beyond that. I thought she was concerned that the Better Business Bureau had come back and had questioned . . . had raised issues with regard to the vacation business that he was in, and that all of the . . . even though there could be no finding at this stage that there was a fraud involved in that, the indicia . . . the same indicia that applied in the earlier conviction about the Better Business Bureau. It's not that apparent with the timeshares . . . with the vacation business. Well, I . . . the probation department did refer to the Better Business Bureau and things . . . that there were complaints, but the nature of the complaints is completely different. In the original crime of conviction, what he was accused of doing is an out and right out fraud. He was contacting owners of timeshares and saying, we have a purchaser for you. You just need to send us an advance fee. And there was no purchaser. There was no nothing. He would take the advance fees, and then they would just vanish. But these were timeshares for vacations. I mean, it's not like a completely separate business. I mean, it was . . . But the nature of the fraud is they were coming to him, and basically they made up a story. In the business that he was in, mind you, after he pled, till sentencing, there was a period of about four years. He started that business before that. So this was a business that was going on for years, was he was selling vacation packages. There's no dispute. The record supports the fact he had a legitimate business. He sold thousands and thousands of vacation packages. As he pointed out at sentencing, yes, he's in the hospitality business. There's going to be complaints. And it seems to me maybe he had a sloppily run business that he didn't address these complaints. At the time of sentencing, he came before the court. There was no dispute. All the Better Business Bureau complaints had been taken care of. So, yes, in name, they may have involved similar things, but that's where the similarity ended. One was an out-and-out fraud. One was a business that was run maybe even, I would say, in regions of supply. This court's . . . it's an old decision, but it talked about sharp business practice. The decision there describes some similar practices. They used aliases and things like that. The court said, it's sharp business practice. It's not fraud. Here, I don't even know if it's that. I think it's more he was sloppy. He didn't have an accountant. He would just focus on making sales. You're using different aliases as sloppiness rather than deception. In regions of supply, there was different aliases. It didn't go to the benefit of the bargain. That's the important part. The important part is in the original fraud that he was convicted of, he was . . . there was no . . . it was a bogus sales pitch. Here, there was real product. There were real trips. There were real sales. Some people may have been unhappy. Ultimately, in sentencing, the evidence is that he took care of that. This restriction, which was quite . . . The use of an alias to conceal your criminal record is not something that's peculiar to a vacation business as opposed to any other. That's a type of fraud that persons who are incentivized to use that kind of deception would do it, whether it's an airlines ticket business, a vacation business, a sales of cigarettes, whatever. I agree. That's why if there was a restriction, it had to be narrowly tailored. Yes, you want to impose a restriction. You can't use an alias. That's a narrow, tailored restriction. That's not what the court did here. The court said you cannot engage in any telemarketing business, in any direct mail business, in any vacation-related business, any timeshare. In this Court's cases . . . I know Your Honor was in Doe. It just . . . it doesn't satisfy . . . come near to satisfy what is required to impose such a restriction. Is there anything in the record to show the types of complaints that had been made to the Better Business Bureau, whether they were complaints about fraud or whether they were complaints about other . . . I don't believe so. I think to the extent that there was a reference, it was that they didn't follow up on the complaints. They weren't getting back to people on the complaints. There certainly was . . . the government says, oh, we don't even have to demonstrate that there was fraud. There was no findings. Well, then, if you're going to base a sentence on that, you need to have those findings. You need certainly a clearer record and just . . . that's not what happened here. But the condition he pled guilty to, the violation was he wasn't giving his records over to the probation officer so that she could check them out to see whether . . . Financial records. Yeah, of his business. Well, actually, I think . . . actually, I think the actual . . . what he gave records related to his business, I think ultimately what he pled guilty was he didn't give personal financial records. There were two different sets of records that he requested. He certainly gave some records, but that has nothing to do with the nature of the business itself. That's . . . I see my time is up. You've got a minute for rebuttal. Thank you, Mr. Hurwitz. Ms. Lonergan. What about that? It seems to me it's a plausible argument that's being made that essentially the district court is saying, okay, you're going to jail for five years. That's one thing. When you come out, you can no longer do the type of business that you are familiar with. I'm not sure I understand why there's justification for taking him out when he comes out of jail five years later of the type of business that he's familiar with. I would understand it perfectly if the record showed that he had been conducting that business, that he had been conducting the vacation rental business, telemarketing, whatever, in a fraudulent manner on this occasion, but does the record have that? Your Honor, the record does not have a finding that there was fraud, but our position . . . But apart from the finding, does it have evidence that he was doing it? Finding is one thing, but was there even evidence that his business was characterized, his recent business was characterized by fraud? Your Honor, there are indicia in the record that gave Judge Cote every reason to have legitimate concerns about how he was running the business, and to be clear, she does not need to find that he is conducting his current business in a criminal manner to be concerned about deterring his future behavior and protecting the public. This Court has raised, in fact, today the fact that one of the things that the defendant was doing was using aliases not just for the businesses, not just changing the business name to avoid poor Better Bureau business ratings, but he was also using aliases for him and his wife to conceal from the public that they had criminal convictions . . . I understand that, but as I said before, what does that have to do with whether the business that he engages in is a travel business or some completely different kind of business? Yes, that's fraudulent activity, but it has nothing to do with whether it's a travel business or some other kind of business. So I don't understand. I understand that that's a concern, but why is it a concern that justifies saying after you get out of jail in five years, you can't do the type of business that you have familiarity with? Your Honor, in fact, what I hear the Court advocating would be actually even a broader employment restriction, because if she is going to say the use of aliases is not just tied to the vacation business, but it's tied . . . you could use aliases with any business, and so therefore we're not going to let you conduct any of your own businesses. That would be an even greater restriction. That would be more rational. That would be more rational. Yes, it would be greater, but there would be a logical support for it. But where is the logical support for saying you can't be engaged in the kind of business that you have experience in? Your Honor, I think the logical support . . . Somebody who is fraudulent by nature, who is just a fraudster, is going to find a way to be a fraudster in one thing or another. Your Honor, that may very well be the case. I think what's happening here is the judge code is trying to balance protecting the public, deterring the defendant from engaging in future fraud, but also allowing him to rehabilitate into society to continue to make a living to support himself and his family. He's got a $2 million restitution obligation still standing. That's correct, Your Honor. He has to also meet the obligations of the restitution, which I think is very clear in the record was a large reason that he received this probationary sentence in the first place. Judge code, I think, in trying to balance all of those things, did not want to just lop the defendant off at his knees and say, you're not ever going to be able to work ever again, or the only work you can have is any sort of work in which you are only working for someone else. I think she's trying to strike a reasonable balance between what she has seen in this defendant's conduct, which is the original fraud related to timeshares, and then the serious concern she has with this vacation- related business, trying maybe to . . . Going back to my first question, was there anything in the record of the Better Business Bureau that showed that the concerns that the Better Business Bureau had related to fraudulent activity, particularly pertaining to vacation business, the kind of thing he was doing before? Your Honor, I'm not sure that it's in the record, although I know that the defendant was aware of the types of complaints that had been made, but I  guess my understanding is that there were violations of Florida business regulations as well. There was deceit in the licensing application process by the defendant in getting licenses for the Florida business, as well as the use of aliases, as well as the level of complaints. That's correct, Your Honor. In fact, many of the things that Your Honor has just highlighted are the same as with the original fraud, which in fact was found to be criminal, which was, again, the use of frequently changing business names. Do you know the nature of this vacation business? Was it one where they were collecting money up front that would be applied to vacations as they were later on applied for or sought out, or was it pre-pro-quo to the provider of the vacation directly with the commission going to the company? Your Honor, my understanding is that the travelers would pay for an opportunity to travel, for example, within the next year to a particular resort. That would be money up front? That's correct, Your Honor. That's my understanding, and that's why sometimes my understanding is that, and I think this is . . . the defendant himself discusses this, that customers would ask for their money back because they weren't able to travel or because the resort . . . The record shows that? I believe that the defendant discusses that at the sentencing when he talks about how he's addressed . . . how he has addressed the consumer's complaints in saying that he has refunded the money to those individuals. It did involve individuals who put out money up front for travel, and then they didn't get what they had put the money out for? That's my understanding, Your Honor. I see that I'm over time. If the Court has additional questions, I'm, of course, happy to address them, but otherwise, I will sit down having gone over. Okay. Thank you. Mr. Urwitz, you've got a minute. Just to go back . . . Judge Gironi, just to go back to the point you had raised, the plea itself was . . . on the violation was personal financial records at his plea. At the actual plea, A44, he indicates that he had given six months' worth of business statements. The problem was that he hadn't given personal financial statements. But there's certainly evidence that they were intermingled a bit, right? I know, but in terms of the probation officer knowing what his business is, as a matter of fact, I point out at the original sentencing, all these various company names were in his sentencing submission. These were not hidden names. That's first of all. Judge LaValle, in terms of what the Better Business Bureau complaints were, this is in the sealed appendix, 81, the complaints were that for not responding to complaints or for the customer not being satisfied with their response, what the underlying complaint, there's no evidence as to, there's no dispute based on this record, that the defendant had real vacation packages. He had contracts with timeshare companies to be able to provide the timeshares that he had sold. So . . . . . . Is there anything that we can look at in the record that would show what the nature of the concerns of the Better Business Bureau are? In this record, no.  Is the violation report for the probation officer in the record? It's in the sealed appendix. I think Judge LaValle, you hit it on the nose, there are restrictions that could have been imposed that were narrowly tailored to address concerns here. They're not the broad restrictions that were imposed here to basically prohibit him from essentially sales positions, which is something that he knows and if he's going to make restitution, that's something that he should be permitted to do. Thank you both. We'll reserve decision. That completes our argued matters for today. We have one on submission, so I'll ask the clerk to adjourn court.